IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THE ROBERT N. BREWER | ) | |
| FAMILY FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 2:18-cv-915-ALB |
| | ) | |
| REX LARRY HUGGINS, as TRUSTEE | ) | |
| OF THE CHRISTINE C. BREWER | ) | JURY TRIAL DEMANDED |
| REVOCABLE TRUST, and individually, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff, the Robert N. Brewer Family Foundation ("Plaintiff" or the "Foundation"), and for its First Amended Complaint against Defendant Rex Larry Huggins ("Defendant" or "Larry Huggins"), both individually and in his capacity as trustee of the Christine C. Brewer Revocable Trust u/a/d July 2, 2014 (the "Trust"), avers as follows:

## INTRODUCTION

This action stems from Defendant's violation of his fiduciary duties, first as agent under a power of attorney for Christine C. Brewer ("Chris Brewer") and then as trustee of the Trust, which resulted in the misappropriation of Trust assets worth more than $1,100,000. Chris Brewer's late husband, Robert N. Brewer, built and operated several businesses, including a franchise and motel chain, named Best Inns, which, at its peak, consisted of 32 properties in seven states from 1984 until his death on March 10, 2012. After his death, his motel and other business interests were transferred through probate (probate file No. 01-P-22) in the County of Williamson, State of Illinois, with millions of dollars being transferred to the Foundation; his wife, Chris Brewer; and his two sons. Thereafter, Chris Brewer, a Florida resident, on July 2, 2014 created the Trust in

1

accordance with Florida law. The Trust named Chris Brewer as trustee and Defendant as the successor trustee. In 2014, Chris Brewer also executed a General Durable Power of Attorney ("Power of Attorney"), naming Defendant as Chris Brewer's agent and a Designation of Health Care Surrogate ("Healthcare Power of Attorney"), naming Defendant's wife, Elaine M. Huggins, as Chris Brewer's health care surrogate. In 2016, Defendant, utilizing his Power of Attorney and his wife, utilizing her Healthcare Power of Attorney, had Chris Brewer transported from her home in Florida and admitted to a rehabilitation center in Tallassee, Alabama, due to Chris Brewer having dementia, suffering a stroke, and falling and injuring herself. After being discharged from the rehabilitation center, Defendant arranged for Chris Brewer to stay at his home, where she stayed until her death on June 1, 2018.

From February 12, 2014 to her death, Defendant acted as Chris Brewer's agent under the Power of Attorney. During this period, Defendant transferred and utilized the assets of Chris Brewer and the Trust to and for his, his wife's, and his daughter's benefit in contravention of the express terms of the Power of Attorney and Trust. The entire scope of Defendant's conduct is presently unknown, but Plaintiff believes that from the date of the Power of Attorney until Chris Brewer's death on June 1, 2018, Defendant misappropriated more than $1.1 million from Chris Brewer's and the Trust's banking and brokerage accounts. Upon Chris Brewer's death, in accordance with the Trust's provisions, Defendant was named successor trustee. Thereafter, Defendant has continued to divert more than $190,000 of Trust assets to himself.

After Chris Brewer's passing, the attorney for the Trust, Ronald E. Osman of the firm of Ronald E. Osman and Associates, Ltd.[1] requested that Defendant provide information on certain

---

[1] Ronald E. Osman is an Illinois attorney that represented Robert N. Brewer in all of his business ventures from 1982 until Mr. Brewer's death, represented Chris Brewer personally from March

distributions from the Trust and requested an accounting related to certain credit card charges and personal checks. Defendant, however, has refused to provide much of this information or to communicate with the Trust's attorney. Left with no other recourse, Plaintiff brings this action to protect the remaining Trust corpus, recover all amounts improperly taken by Defendant, and properly distribute the Trust assets in accordance with the terms of the Trust.

## PARTIES

1.      Plaintiff, the Robert N. Brewer Foundation, is an Illinois not for profit corporation formed and funded by Robert N. Brewer on January 19, 1997 and presently in good standing, domiciled in Herrin, Illinois. Plaintiff provides higher education scholarships for high school graduates of Marion and Herrin, Illinois with over 800 scholarships granted to date and has also granted millions of dollars to the Mayo Clinic for research on idiopathic pulmonary fibrosis and other lung diseases.

2.      Plaintiff is a beneficiary of the Trust.

3.      Defendant Larry Huggins is the Trustee of the Trust and resident of the State of Alabama.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action in accordance with 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and is between citizens of different states. Plaintiff is a citizen of Illinois and Defendant is a citizen of Alabama.

---

12, 2012 until her death, is presently the attorney for the Trust, presently the attorney for the Foundation, and the alternative trustee to the Defendant.

5.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and a substantial portion of the acts complained of herein occurred in this District.

## BACKGROUND FACTS

6.     Chris Brewer created the Trust on July 2, 2014 and requested in writing that Ronald E. Osman, her personal attorney and the attorney for the Trust, retain the original Trust documents and her original will. A true and accurate copy of the referenced writing and Trust are attached hereto as Exhibits A and B, respectively.

7.     On June 1, 2018, Chris Brewer died at the age of 89. In accordance with Florida law, Ronald E. Osman filed Chris Brewer's last will and testament with the Clerk of Courts, Lee County, Florida on June 28, 2018 and still has possession of the original Trust documents.

8.     Chris Brewer funded the Trust with her personal assets and her distribution from the last will and testament of Robert N. Brewer, as probated in cause No. 01-P-22 in Williamson County, Illinois.

9.     The Trust identified the following beneficiaries:

To Grantor's nephew, Rex Larry Huggins, and his wife, Elaine Huggins, or the survivor thereof, such of the follow items as Grantor may own or as may be held in this Trust: 2012 Lexus or other automobiles, all sterling silver pieces, all fur apparel, all gold flatware, all crystal, all china settings, all Christmas decorations and all paintings by Melba Huggins Wilkerson. Grantor may leave a memorandum or may designate the beneficiary for each piece of jewelry by affixing the name of the recipient to have such piece. Trustee shall deliver the jewelry to the designated recipient at the earliest possible date. Trustee shall donate all Grantor's clothes, shoes, purses and other apparel to a charitable organization of Trustee's choice. Any personal property not specifically set forth in this paragraph or designated by memorandum or by affixing the name of the recipient shall be added to the residuary of this Trust.[2]

---

[2] Chris Brewer did not leave a memorandum designating any beneficiaries to receive her jewelry. Thus, the jewelry, whose value exceeds $200,000, was added to the residuary of the Trust in accordance with this Trust paragraph. Ex. B, Distributable Trust Estate.

Specific Cash gifts:

1. To Grantor's nephew Rex Larry Huggins the sum of $1,400,000.00 if he survives Grantor; if he does not. Then to his lineal descendants per stirpes.

2. To Susan Huston, if she survives Grantor, the sum of $25,000.00.

3. To Ronald E. Osman the sum of $100,000, if he survives Grantor, if he does not, then to his lineal descendants per stirpes.

4. To Michelle A. Osman, the sum of $50,000.00 if he [sic] survives Grantor, if he [sic] does not then her lineal descendants per stirpes.

5. To Mary Ann Patterson, if she survives me, the sum of $50,000.00.

6. To Elaine Huggins, the sum of $50,000.00, if he [sic] survives Grantor, if he [sic] does not, then to her lineal descendants per stirpes…..

Charitable gifts:

To Habitat for Humanity of Lee County, 1288 North Tamiami Trial, Fort Myers FL 33903, the sum of $25,000.00.

To Salvation Army, 10291 McGregor Boulevard, Fort Myers FL 33907, the sum of $25,000.00

To Cypress Lake United Methodist Church, 8570 Cypress Lake Drive, Fort Myers FL 33919, the sum of $50,000.00.

To the National chapter of the American Heart Association the sum of $100,000.00.

To the National chapter of the American Lung Association the sum of $100,000.00.

To the National chapter of the American Cancer Society the sum of $100,000.00….

* * *

All the rest, residue and remainder of the Trust estate, real and personal, or whatsoever nature wheresoever situation, but excluding property over which I may have a power of appointment, herein referred to as the reside of the Trust estate shall be distributed to the Robert N. Brewer Family Foundation located in Herrin. Illinois.

Ex. B at 4-5.

10.     The Trust designated Chris Brewer as Trustee, Defendant as successor Trustee, and Ronald E. Osman to serve as successor Trustee after Defendant. *Id.* at 5.

11.     The Trust provided that "it had been prepared and executed in Florida and all questions concerning the meaning and intention of the terms of this instrument and concerning its validity and all questions relating to performance under it shall be judged and resolved in accordance with the laws of Florida." *Id*. at 14.

12.     On that same day, July 2, 2014, Chris Brewer executed a Last Will and Testament of Christine C. Brewer (the "Will"). A true and accurate copy of the Will is attached hereto as Exhibit C.

13.     The Will provided that "[w]henever used in this Will, the Christine C. Brewer Revocable Trust shall refer to that certain trust established by me as Grantor by instrument executed by me on the 2nd day of July, 2014, prior to the execution of this Will…." Ex. C at 1.

14.     The Will provided that Chris Brewer retained the right to bequeath certain tangible personal property by a codicil to the Will, but she never executed any such codicil. The Will further bequeathed Chris Brewer's automobile, sterling silver pieces, fur apparel, gold flatware, crystal, china settings, Christmas decorations, and paintings by Melba Huggins Wilkerson to Defendant and his wife, Elaine Huggins. These same items are identified in the Trust as Trust property and gifted to Defendant and Elaine Huggins in accordance with that instrument. Ex. B at 4.

15.     As for all remaining assets and property of Chris Brewer, the Will provided that they would be transferred to the Trust as follows:

> All the rest, residue and remainder of my property, real and personal, of whatsoever nature and wheresoever situated, of which I may die seized or possessed or which I may own or have any interest in at the time of my death, but excluding property over which I may have a power of appointment, herein referred to as the residue of my probate estate, I give IN TRUST to the Trustee of the Christine C. Brewer Revocable Trust as described above, to be added to the trust property and held and

distributed in accordance with the terms of the trust instrument…granting unto my Trustee full power and authority either to protect, conserve and to sell, or to lease, or to encumber, or otherwise to manage and dispose of all of said property. Ex. C at ¶ VII, Residue.

16.     Thus, the Trust and Will demonstrate that all Chris Brewer's assets were to be part of her estate plan, that these assets were to be transferred to the Trust during Chris Brewer's lifetime or, at the latest, upon her death, and that these assets were then to be distributed in accordance with the terms of the Trust.

17.     On July 16, 2014, at the direction of Chris Brewer, Attorney Osman sent Defendant copies of the Will and Trust via email. The email stated in part: "in accordance with Chris' instructions I am attaching a copy of her Last Will and Testament, [and] Revocable Trust … Please note that even if we do not…transfer…all the assets into the Trust that…the ["]Title to Property["] clause on the first page of the Trust will 'save' the asset and it will be deemed to be in the Trust. Also the Will pours over all the assets into the Trust…."

18.     Defendant therefore knew about these instruments and that it was Chris Brewer's intent that all of her assets were to be transferred into, held by, and distributed through the Trust.

19.     On February 21, 2014, Chris Brewer executed the Power of Attorney naming Defendant with full power and authority to, among other things, transact business for Chris Brewer and execute documents on her behalf. A true and accurate copy of the General Durable Power of Attorney: Finances, Property, and Health Care (Florida Statutes 709.01 et. seq.) is attached hereto as Exhibit D. Chris Brewer also executed the Healthcare Power of Attorney naming Elaine Huggins as Chris Brewer's health care surrogate. A copy of the Healthcare Power of Attorney is attached as Exhibit E.

20.     On August 4, 2015, Chris Brewer's Merrill Lynch brokerage accounts were transferred to the Trust. The Merrill Lynch accounts held approximately $2,198,000 in investment interests and cash at that time.

21.     In addition, Chris Brewer's bank accounts and certificates of deposit at the SunTrust Bank in Florida, totaling in excess of $500,000 were to be transferred to the Trust when the certificates of deposit came due in accordance with Chris Brewer's estate plan.

22.     However, rather than deposit the proceeds into the Trust in accordance with the estate plan, when the certificates of deposits matured, Defendant deposited the proceeds into a new account at the Bank of Vernon titled Christine C. Brewer or Larry Huggins or Elaine M. Huggins 750 McCain Lane, Notasulga Al. 36866 ("Survivorship Account").[3]  A true and accurate copy of a bank statement from the Survivorship Account is attached hereto as Exhibit F. This was in direct contravention of the instructions given by Chris Brewer and her attorney, Ronald E. Osman.

23.     Upon discovering the Survivorship Account in mid-2016, Attorney Osman contacted Defendant and after several communications between Defendant and Attorney Osman, Defendant opened a Trust account titled Christine C. Brewer Revocable Trust Dated 7-2-14-Larry Huggins Trustee 750 McCain Lane, Notasulga, AL 36866-3990 (the "Trust Account") at the Bank of Vernon on September 26, 2016. A true and accurate copy of bank statements from the Trust Account are attached hereto as Exhibit G.

24.     On October 14, 2016, Defendant transferred funds from the Survivorship Account into the new Trust Account.

---

[3] Defendant is retired from the Bank of Vernon as a past President and presently serves as one of its directors.

25.     The records available to the Foundation show that the Trust Account had a balance of $323,279.43 on November 30, 2016. By July 6, 2018, a month after Chris Brewer's death on June 1, 2018, the Trust Account had a balance of $158,691.48. Ex. G at 3 and 22.

26.     On December 21, 2015, Attorney Osman sent Christ Brewer at her Florida residence, a distribution check of $270,000.00 representing proceeds from the sale of her interest in the Best Suites motel located in Lake Charles, Louisiana. These funds were to be deposited into a Trust account in accordance with Chris Brewer's estate plan.

27.     Defendant, however, upon information and belief deposited $170,000.00 of these funds into an account at SunTrust Bank in Fort Myers, Florida titled Christine C. Brewer POD POA with Defendant holding the POA and thus being the payable on death designee on or about December 23, 2015. Defendant knew that these funds belonged to the Trust. Defendant has not accounted for any of these funds in the Trust financial information so it is unknown where the remaining $100,000 was deposited or spent.

28.     On June 15, 2016, due to Chris Brewer previously suffering a stroke and having dementia, Defendant arranged for her to be transported from her home in Florida and to be admitted to the Tallassee Health and Rehabilitation, LLC, in Tallassee, Alabama.

29.     Defendant and his wife, Elaine, who held the Healthcare Power of Attorney, decided that Chris Brewer should be admitted to the Tallassee Health and Rehabilitation, LLC so that they could more conveniently assist in her care.

30.     While at the Tallassee Health and Rehabilitation, LLC on June 21, 2016, Chris Brewer allegedly signed a "Priority of Distribution" for the Trust, setting out "specific cash gifts" of $1,400,000 "[t]o Grantor's nephew Rex Larry Huggins and wife Elaine Huggins." A true and accurate copy of the alleged Priority of Distribution is attached hereto as Exhibit H.

31.     On that same day, Chris Brewer also allegedly signed a second "Priority of Distribution" removing the charitable gifts under the Trust to the American Heart Association, American Lung Association, American Cancer Society, Habitat for Humanity of Lee County, Salvation Army, and Cypress Lake United Methodist Church (collectively "Charitable Organizations") and gifting the amounts to Defendant's daughter, Laura Huggins Merry, and Defendant's wife, Elaine Huggins, instead of the Charitable Organizations. A true and accurate copy of the alleged Second Priority of Distribution is attached hereto as Exhibit I.

32.     These two alleged Trust Priority of Distributions documents (collectively "Purported Trust Amendments") were allegedly witnessed by only one person, Marjie Mitlay, who upon information and belief is the sister of Elaine Huggins.

33.     On the same day of these Purported Trust Amendments, Attorney Osman visited Chris Brewer at the Tallassee Health and Rehabilitation, LLC. During the visit, Chris Brewer was confused as to who Attorney Osman was, even though he had represented Chris Brewer and her late husband for decades. Attorney Osman specifically questioned Chris Brewer as to her relatives, the date, and where she was located. Chris Brewer could only remember that she had a brother and sister who she thought were both still alive (they were both dead at that time). Chris Brewer did not know where she was located, said she wanted to go home but did not know where home was, and did not know the date, including the year. Chris Brewer further did not mention the Purported Trust Amendments to Attorney Osman, which was highly unusual since Attorney Osman was the attorney for both Chris Brewer and the Trust.

34.     Chris Brewer's severe confusion on June 21, 2016 demonstrates that she lacked the requisite mental capacity to understand the effect of the Purported Trust Amendments. Further, the

Purported Trust Amendments failed to comply with Florida law concerning the amendment of a trust, in that only one witness executed each of the documents. *See* FS §732.502(5).

35.    Later that day when Attorney Osman visited with Defendant, Defendant also failed to mention the Purported Trust Amendments even though he knew Attorney Osman was the attorney for Chris Brewer and the Trust.

36.    In fact, Defendant did not provide Attorney Osman a copy of the Purported Trust Amendments until January 9, 2018 when Attorney Osman and his Wife Michelle traveled to Alabama to visit Chris Brewer at Defendant's home. At the end of the visit Defendant produced a folder that contained a copy of each amendment and presented them to Attorney Osman.  When Attorney Osman asked why he had not previously been given copies, Defendant did not respond. Defendant, however, told Attorney Osman that he would not be cheated out of his inheritance.

37.    Chris Brewer remained at Tallassee Health and Rehabilitation, LLC until July 17, 2016, after which she was moved into Defendant's and his wife's home located at 750 McCain Lane, Notasulga, Alabama, 36866, who thereafter arranged and provided for Chris Brewer's care until her death.

38.    During Chris Brewer's stay with Defendant, she was completely dependent on Defendant to manage her affairs, her physical health continued to deteriorate, and her mental health did not improve.

39.    For example, Chris Brewer would speak to dead relatives and complained about confusion. She also would call Defendant and his wife the wrong names, "Jack" and "Betty," which it is believed are the names of Chris Brewer's nephew and niece. Chris Brewer also would become confused as to where she was staying, where her home was, suffered hallucinations, and

became suspicious that nurses, hired by Defendant to care for her at her Florida home, had stolen her jewelry.

40.     On July 12, 2016, Attorney Osman asked that Defendant have Chris Brewer evaluated by a physician to assess her mental and physical condition. Defendant advised that he would, but never informed Attorney Osman whether such an examination had been performed.

41.     Defendant and Elaine Huggins, however, periodically updated Attorney Osman and Michelle Osman as to Chris Brewer's physical and mental health, including:

   a. On July 17, 2016, Elaine Huggins texted Michelle Osman that Chris Brewer's "dementia has worsened[.]"

   b. On August 30, 2016, Defendant advised Attorney Osman that Chris Brewer was happy with staying at his home, but she sometimes asked to return home. However, she would give various addresses, including her home from 35 years ago, as to where she wanted to return.

   c. On September 13, 2016, Defendant advised Attorney Osman that Chris Brewer was confused and, on several occasions, wanted her purse so she could get her keys to go home; however, when asked where her home was, she was always confused.

   d. On October 6, 2016, Defendant advised Attorney Osman that Chris Brewer had been more confused than normal over the last week and had on various occasions told him that she was seeing snakes and other items in her room.

   e. On October 25, 2016, Elaine Huggins texted Michelle Osman that: "Chris is getting weaker. Can't sit up without support…Very confused early morning and afternoon…[Chris Brewer] had accused one of the people stealing from her that was caring for her. I don't think the lady was guilty. D[e]mentia patients do that [.]"

   f. On March 29, 2017, Elaine Huggins texted Michelle Osman: "Chris is still declining and more confused, but still surprises me with what she remembers and still eating good. She is talking more about her deceased relatives which I've heard people do when they start declining."

   g. On April 11, 2017, Defendant advised Attorney Osman that Chris Brewer was continually living in the past, talked about how her deceased brother and sister would visit her, and believed she was currently living in her old home.

Defendant further advised on April 11, 2017 that he did not believe Chris Brewer was mentally competent.

h.   On June 28, 2017, Defendant advised Attorney Osman that Chris Brewer's mental capabilities seemed to be deteriorating, that on many occasions she would refer to his wife and him as "Jack" and "Betty," that she continued to live in the past, discussed building a new home, and expressed gratitude that Defendant and his wife were helping her.

i.   On July 27, 2017, Elaine Huggins texted Michelle Osman: "Chris calls me Betty. I have a new name. Lol. I just go along…she had a cousin named Betty. It's sad to see her getting weaker."

42.   During the above referenced April 11, 2017 conversation when Defendant told Attorney Osman that Chris Brewer lived in the past and talked to dead relatives, Defendant then told Attorney Osman that Chris Brewer had recently said she wanted Defendant and his wife to have all her money. Defendant asked whether Chris Brewer's assets could be transferred to Defendant and Elaine instead of the Trust. Defendant suggested that he would be sure that Attorney Osman and his wife received all the money provided for them in the Trust and that Attorney Osman would receive his fees. Attorney Osman responded that he doubted Chris Brewer was competent at that time to change her Will and Trust and that the beneficiaries of the Trust would likely object to such a change. Defendant then replied that an attorney who was a personal friend had given him the same advice.

43.   Based on Defendant's comments, Attorney Osman then asked Defendant whether he thought Chris Brewer was mentally competent. Defendant responded, "no," that "she's in and out" but he did not believe she was mentally competent.

44.   On or around May 31, 2018, Chris Brewer's health deteriorated even further, she slipped into a coma, and was transported to Tallassee Health and Rehabilitation, LLC. She remained in a coma until June 1, 2018, when she passed away at the age of 89.

45.   By operation of the Trust, upon Chris Brewer's death, Defendant became Trustee.

13

46.     At the time of Chris Brewer's death, the Trust assets should have totaled more than $3,000,000, including the $2.19 million in the Merrill Lynch account, approximately $500,000 representing amounts formerly held in Chris Brewer's personal bank account and certificates of deposit, and $270,000 representing distributions from the Best Suites Lake Charles transaction. The Trust property also should have included a 2012 Lexus, sterling silver pieces, fur apparel, gold flatware, crystal, china settings, Christmas decorations, paintings by Melba Huggins Wilkerson, and jewelry.

47.     The jewelry had an insurance value of $213,187 as of September 22, 2014, and included (1) a woman's Rolex watch with diamonds valued at $29,661; (2) two diamond rings valued at $28,898; (3) a diamond necklace valued at $19,003; (4) gold earrings valued at $3,033; (5) another set of diamond earrings, and (6) a diamond tennis bracelet valued at $36,500. A true and accurate copy of an Insurance Coverage Summary Renewal is attached hereto as Exhibit J.[4]

48.     After Chris Brewer's death, Attorney Osman became aware of certain suspicious distributions from the Trust. For example, shortly before Chris Brewer's death several checks were supposedly signed by Chris Brewer in large amounts payable to Defendant, his wife, and his daughter from the Trust Account and the Trust's Merrill Lynch account. Defendant also withdrew $15,000 from the Trust Account by telephone on June 1, 2018, the day Chris Brewer was in a coma and died.  Ex. G at 22.

49.     Further, Attorney Osman discovered that Defendant and his wife utilized a Citi-Bank credit card owned by Chris Brewer. The credit card statements and corresponding bank

---

[4] The Foundation's copy of the Insurance Coverage Summary Renewal is missing the second page of the itemized articles which apparently lists four other pieces of jewelry and their values. These other pieces of jewelry are also property of the Trust; their identification and value will need to be discovered during discovery.

records show, from January 1, 2017 to Chris Brewer's death on June 1, 2018, that the credit card was used to purchase approximately $274,276.51 in groceries, gas, prescription drugs, and discretionary items that are highly questionable for the use of an 89 year-old woman. For instance, in the month that Chris Brewer slipped into a coma and died, her credit card statement showed approximately $1,846.00 in charges at Neiman Marcus, a high-end clothing retailer. These charges included: (1) $160 on May 10; (2) $350 on May 12; (3) $330 on May 13; (4) $260 on May 17; (5) $485 on May 18; and (6) $261 on May 19, 2018. These credit card charges totaling $274,276.51 were paid with funds from Chris Brewer's personal SunTrust Bank account.

50.     Based upon the amount of the above referenced withdrawals, personal checks to Defendant, his wife, and his daughter, and unusual expenditures on Chris Brewer's credit card, Attorney Osman contacted Defendant on August 8, 2018, seeking an explanation for these disbursements, checks, and credit card expenses.

51.     Defendant responded on August 20, 2018 that Chris Brewer insisted that he, his wife, and his daughter receive these amounts as gifts and that Chris Brewer gave Defendant and his wife permission to use her credit cards as needed. Defendant further sent Attorney Osman some credit card statements but failed to provide the remainder of the requested items.

52.     Around this time, Attorney Osman commissioned a forensic audit ("Audit") of the Trust's financial records he had in his possession and the items provided by Defendant. The Audit revealed $1,140,192.65 in unidentifiable disbursements from Chris Brewer's and the Trust's banking and brokerage accounts.

53.     On September 4, 2018, Attorney Osman again requested that Defendant provide additional details on disbursements from Chris Brewer's and the Trust's banking and brokerage accounts. These included a request for 22 months of itemized bank statements from Chris Brewers

SunTrust Bank account; evidence that Chris Brewer was mentally competent to make payments from December 26, 2015 to June 2018 on hundreds of thousands of dollars in checks to Defendant, his wife, and his daughter; further explanation as to checks signed by Defendant as Chris Brewer's power of attorney; further explanation of a gift of over $180,000 around April 11, 2017 that Chris Brewer supposedly gave to Defendant and his wife; an accounting of the $270,000 distribution from Best Suites Lake Charles; and further explanation for the charges on Chris Brewer's credit card.

54.     Defendant did not reply to this request nor provide any of the requested items or an accounting.

55.     On August 1, 2019 and pursuant to a Court order, Defendant provided the first and only accounting of Trust assets. A true and accurate copy of the "Inventory and Accounting for the Estate of Lillie Christine Brewer as of July, 2019" (the "Accounting") is attached hereto as Exhibit K.

56.     The one-page Accounting identifies $1.8 million in the Merrill Lynch account, $25 in an unidentified SunTrust account, jewelry—three bracelets, three earrings, two necklaces, and one diamond ring—value unknown, and miscellaneous clothing and accessories valued at $250.

57.     The Accounting fails to identify any additional Trust assets, totaling more than $1.1 million, including approximately $500,000 that was withdrawn between 2015 and 2018 from the Merrill Lynch account, approximately $500,000 formerly held in Chris Brewer's personal SunTrust Bank account, and the $270,000 distribution from the Best Suites Lake Charles transaction.

58.     The Accounting further fails to identify funds existing in the Trust Account and Chris Brewer's personal account at SunTrust Bank at the time of Chris Brewer's death. The Trust

Account had a balance of $158,691.48 on July 6, 2018, more than a month after Defendant became Trustee.[5] Chris Brewer's personal SunTrust Bank account had a balance of $4,266.62 as of July 9, 2018. The Accounting offers no explanation as to what Defendant has done with the $158,691.48 and $4,266.62 balances.

59.     The Accounting further fails to identify the 2012 Lexus or other automobile owned by Chris Brewer, the sterling silver pieces, fur apparel, gold flatware, crystal, china settings, Christmas decorations, paintings by Melba Huggins Wilkerson, and the Rolex watch valued at $29,661.

60.     Defendant has taken no actions to identify these assets or to turn them over to the Trust.

61.     The loss of these assets means the Trust lacks sufficient funds to pay all the specific cash and Charitable Organization beneficiaries with no residue remaining to pay the Foundation. Once these funds are returned, the Trust will have sufficient funds to pay the specific cash and Charitable Organizations with more than $900,000 remaining to distribute to the Foundation.

62.     This $900,000 plus distribution represents forty-six four-year college scholarships to deserving high school graduates who have had to work throughout their high school career and in most cases would not have the opportunity for higher education without this assistance. Or, this distribution represents additional funding to the Mayo Clinic for its continued research into, and medical treatment of, Idiopathic Pulmonary Fibrosis. The Mayo Clinic has acknowledged that its

---

[5] Because Defendant has failed to provide adequate records to identify specific funds transferred from Chris Brewer's personal SunTrust Bank account to the Trust Account, the Trust Account balance of $158,691.48 as of July 6, 2018 may reflect, in part or whole, a portion of the $500,000 formerly held in Chris Brewer's personal SunTrust Bank account. Discovery will be needed to determine the exact relationship between the funds in these two bank accounts.

research into, and treatment of, Idiopathic Pulmonary Fibrosis would not be possible without the Foundation's assistance and support.

## CLAIMS AGAINST LARRY HUGGINS INDIVIDUALLY AND IN HIS CAPACITY AS TRUSTEE OF THE CHRISTINE C. BREWER REVOCABLE TRUST

## COUNT I
## BREACH OF POWER OF ATTORNEY

63.     Plaintiff adopts and realleges all the foregoing allegations as if set forth herein in full.

64.     As Chris Brewer's agent under the Power of Attorney, Defendant owed common law and statutory fiduciary duties which included acting in good faith and preserving Chris Brewer's estate.

65.     These fiduciary duties include the following. Under Florida Statute §709.2114, an "agent is a fiduciary" (1) who "[m]ust act only within the scope of authority granted in the power of attorney," (2) who must exercise that authority "in good faith," (3) who "[m]ay not act contrary to the principal's reasonable expectations actually known by the agent," (4) who "[m]ay not act in a manner that is contrary to the principal's best interest," (5) who "[m]ust attempt to preserve the principal's estate plan, to the extent actually known by the agent," and (6) who "[m]ust keep a record of all receipts, disbursements, and transactions made on behalf of the principal[.]" FS §709.2114(1)(a)(1)-(4).

66.     In addition, an agent must "[a]ct loyally for the sole benefit of the principal," [a]ct so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's best interest," and "[a]ct with the care, competence, and diligence ordinarily exercised by agents in similar circumstances[.]" FS §709.2114(2)(a)-(c).

67.     Further, only an "agent who acts in good faith is not liable to any beneficiary of the principal's estate plan for failure to preserve the plan." FS §709.2114(3).

68.     During the period that Defendant acted as agent under the Power of Attorney, Defendant used his position of trust and authority to divert more than $1.1 million of assets belonging to Chris Brewer and the Trust to himself and his family, including approximately $500,000 from the Merrill Lynch account, approximately $500,000 formerly held in Chris Brewer's personal SunTrust Bank account, and the $270,000 distribution from the Best Suites Lake Charles transaction.

69.     Neither the Power of Attorney nor Florida law permitted Defendant the use of Chris Brewer's and the Trust's assets totaling more than $1.1 million. Rather, FS §709.2202(4) authorizes an agent with general gift authority to make gifts not in excess of "the annual dollar limits of the federal gift tax exclusion under 26 U.S.C. § 2503(b)…"  Defendant, by providing himself and his family gifts totaling more than $1.1 million, exceeded the $15,000 federal gift tax exclusion by more than 70 times.

70.     Defendant knew about Chris Brewer's estate plan and understood that if he diverted more than $1.1 million belonging to Chris Brewer and the Trust, his actions would directly injure the beneficiaries under the Trust. Defendant also knew that Chris Brewer was completely dependent on him to manage her affairs and that she was not mentally competent to authorize his actions in depleting her estate plan by more than $1.1 million.

71.     Defendant further failed to have Chris Brewer examined by a physician, as provided for in the Trust, to evaluate her mental capacity even though he said that he would do so on July 12, 2016 and even though he acknowledged that Chris Brewer was not mentally competent on April 11, 2017.

72.     Defendant's actions violated his duty to act in good faith, his duty to act in Chris Brewer's best interest, his duty to act loyally, his duty to act so as not to create conflicts of interest, and his duty to act with the care, competence, and diligence ordinarily exercised by agents in similar circumstances. Defendant further violated his duty to preserve Chris Brewer's estate plan.

73.     Under Florida Statute §709.2117, an agent is "liable to the principal or the principal's successors in interest for the amounts required to: (1) Restore the value of the principal's property to what it would have been had the violation not occurred; and (2) Reimburse the principal or the principal's successors in interest for the attorney's fees and costs paid from the principal's funds on the agent's behalf in defense of the agent's actions."

74.     The Foundation is a successor in interest to Chris Brewer as a beneficiary under the Trust, and Defendant is therefore liable to the Foundation for his actions.

75.     Defendant is likewise liable to the Foundation for his failure to act in good faith in preserving Chris Brewer's estate plan. FS §709.2114(3).

76.     The Foundation is entitled to more than $900,000 under the Trust, but Defendant's actions have wrongfully denied these amounts to the Foundation.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant, Larry Huggins, as follows:

A.      Award actual, compensatory, incidental, and consequential damages, in an amount to be determined, after a full and complete accounting has been provided to Plaintiff;

B.      Award Plaintiff's attorney's fees and costs incurred in bringing this action;

C.      Order a full and complete accounting that identifies all receipts, disbursements, and transactions made on behalf of Chris Brewer under the Power of Attorney;

D.     Award pre-judgment interest under the Florida Interest Act; and

E.     Award costs and such other and further relief as this Court deems just and proper.

## COUNT II
## BREACH OF FIDUCIARY DUTIES AS
## TRUSTEE OF THE TRUST

77.     Plaintiff adopts and realleges paragraphs 1 through 62 above as if fully set forth herein.

78.     Defendant became Trustee, at the latest, when Chris Brewer died on June 1, 2018.

79.     Defendant, in his capacity as Trustee of the Trust, owes common law and statutory fiduciary duties to all beneficiaries, including Plaintiff.

80.     These fiduciary duties include (1) the duty to administer the trust in good faith, FS §736.0801; (2) the duty to administer the trust solely in the interests of the beneficiaries, FS §736.0802; (3) the duty to act impartially and with due regard to the beneficiaries' respective interests, FS §736.0803; and (4) the duty to administer the trust as a prudent person, exercising reasonable care, skill, and caution, FS §736.0804.

81.     A trustee further has a duty (1) to take reasonable steps to take control and protect trust property, FS §736.0809, (2) to enforce claims of the trust, FS §736.0811, and (3) to compel persons to deliver trust property to the trustee, FS §736.0812.

82.     Defendant, while acting as Chris Brewer's agent under the Power of Attorney, transferred assets from Chris Brewer's and the Trust's banking and brokerage accounts totaling more than $1.1 million to himself and his family. These assets were part of Chris Brewer's estate plan and were intended to be distributed in accordance with the terms of the Trust.

83.     Defendant knew that these assets were part of Chris Brewer's estate plan at the time he transferred these funds to himself and his family and knew that these assets were to be preserved and protected for the benefit of the Trust.

84.     Upon Defendant becoming Trustee of the Trust, he owed a fiduciary duty to all beneficiaries of the Trust to identify these assets and turn them over to the Trust.

85.     Defendant, however, has not turned these assets over to the Trust. Defendant also has failed to identify these assets in the Accounting.

86.     In addition, Defendant has diverted Trust assets and property to himself after becoming Trustee.

87.     On June 1, 2018, the same day that Defendant became Trustee, Defendant withdrew $15,000 from the Trust. The Accounting fails to identify what he has done with these funds. Defendant further failed to identify on the Accounting the Trust Account balance of $158,691.48 and Chris Brewer's personal SunTrust Bank account of $4,266.62, which were the balances of these accounts as of July 6, 2018, more than a month after Defendant became Trustee. The Accounting offers no explanation as to what Defendant has done with these Trust assets.

88.     Defendant has breached his fiduciary duties and abused his position of trust by failing to turn over the funds and assets belonging to the Trust that he diverted to himself and his family while acting as agent under the Power of Attorney, by continuing to divert funds from the Trust after becoming Trustee, and by failing to maintain full, accurate, and precise records upon which the beneficiaries may rely to understand the assets and liabilities of the Trust.

89.     Defendant's acts are not all yet known but include misappropriating more than $1.1 million of funds belonging to the Trust, including failing to turn over approximately $500,000 that was withdrawn between 2015 and 2018 from the Merrill Lynch account, approximately $500,000

formerly held in Chris Brewer's personal SunTrust Bank account, the $270,000 distribution from the Best Suites Lake Charles transaction, the $158,691.48 balance from the Trust Account, and the $4,266.62 balance from Chris Brewer's personal SunTrust Bank account.

90.     Defendant further has failed to account for other Trust property, including the 2012 Lexus or other automobile owned by Chris Brewer, the sterling silver pieces, fur apparel, gold flatware, crystal, china settings, Christmas decorations, paintings by Melba Huggins Wilkerson, and a Rolex watch valued at $29,661.

91.      Since Defendant has failed to account and turn these items over to the Trust, Defendant's continued position as Trustee creates an impermissible conflict in that Defendant has demonstrated that he will neither turn these Trust assets over to the Trust nor pursue claims for the benefit of the Trust to identify and recover these Trust assets. Rather, Defendant continues to act for his own benefit and advantage, which directly injures and damages the Trust and its beneficiaries.

92.     Further, the Accounting identifies that Defendant has used Trust assets to pay $18,290.60 in attorney's fees since October 2018. Defendant, however, failed to serve written notice of intent, as required by FS §736.0802(b), upon each qualified beneficiary whose shares may be affected by these payments.

93.     Defendant's failure to serve this written notice of intent has harmed the Trust's beneficiaries, including the Foundation, warranting an order of the Court compelling Defendant to return these funds with interest to the Trust. *See* FS §736.0802 (b) & (c).

94.     Defendant's actions and violations of his fiduciary duties as Trustee warrant a further order of the Court prohibiting Defendant from using Trust assets to pay future legal fees and costs. *See* FS 736.0802(e).

95.     As a direct and proximate result of Defendant's breach of fiduciary duties to Plaintiff, Plaintiff has been damaged in an amount in excess of $900,000, which amount will become more clearly known once Defendant provides a full and complete accounting as required by FS §736.0815.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant, Larry Huggins, as follows:

A.     Temporarily, preliminarily and/or permanently imposing a constructive trust over the assets of the Trust;

B.     Award actual, compensatory, incidental, and consequential damages, in an amount to be determined, after a full and complete accounting has been provided to Plaintiff;

C.     Order a full and complete accounting as required by FS §736.0815.

D.     Order a return of the $18,290.60 in attorney's fees already paid out of the Trust with interest;

E.     Order a prohibition of the use of Trust assets to pay future attorney's fees or costs;

F.     Award Plaintiff's attorney's fees and costs incurred in bringing this action;

G.     Award pre-judgment interest under the Florida Interest Act; and

H.     Award costs and such other and further relief as this Court deems just and proper.

## COUNT III
## UNJUST ENRICHMENT

96.     Plaintiff adopts and realleges paragraphs 1 through 95 above as if fully set forth herein.

97.     The Trust should have more than $3 million in assets of which more than $900,000 is payable to the Foundation as a beneficiary under the Trust. Ex. B at 5, Residue.

98.     Defendant breached his fiduciary duties, first as Chris Brewer's agent under the Power of Attorney and then as Trustee under the Trust, that has resulted in more than $1.1 million in funds ultimately belonging to the Trust being diverted to Defendant and his family. No provision in the Will, Trust, or Power of Attorney allowed Defendant to divert these funds to himself at the expense of the Trust.

99.     Defendant possesses these Trust assets that in equity and good conscience belong to the beneficiaries of the Trust, including the Foundation.

100.     Defendant will be unjustly enriched if allowed to retain these Trust assets.

101.     The Foundation, Charitable Organizations and other beneficiaries will be harmed if Defendant is allowed to retain these funds.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant, Larry Huggins, as follows:

A.  Award actual, compensatory, incidental, and consequential damages, in an amount to be determined, after a full and complete accounting has been provided to Plaintiff;

B.  Award Plaintiff's attorney's fees and costs incurred in bringing this action;

C.  Award pre-judgment interest under the Florida Interest Act; and

D.  Award costs and such other and further relief as this Court deems just and proper.

## COUNT IV
## MONEY HAD AND RECEIVED

102.     Plaintiff adopts and realleges paragraphs 1 through 95 above as if fully set forth herein.

103.     The Trust should have more than $3 million in assets of which more than $900,000 is payable to the Foundation as a beneficiary under the Trust. Ex. B at 5, Residue.

104.     Defendant breached his fiduciary duties, first as Chris Brewer's agent under the Power of Attorney and then as Trustee under the Trust, that has resulted in more than $1.1 million in funds ultimately belonging to the Trust being diverted to Defendant and his family. No provision in the Will, Trust, or Power of Attorney allowed Defendant to divert these funds to himself at the expense of the Trust and its beneficiaries.

105.     Defendant possesses these Trust assets that in equity and good conscience belong to the beneficiaries of the Trust, including the Foundation.

106.     Defendant received these assets even though he knew these assets belonged to Chris Brewer's estate plan and even though he was advised by the Trust's attorney that he had no right to these assets. Thus, Defendant knows that he is not entitled to these assets and that they belong to the beneficiaries of the Trust, including the Foundation.

107.     The Foundation, Charitable Organizations and other beneficiaries will be harmed if Defendant is allowed to retain these assets.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant, Larry Huggins, as follows:

A.  Award actual, compensatory, incidental, and consequential damages, in an amount to be determined, after a full and complete accounting has been provided to Plaintiff;

B.  Award Plaintiff's attorney's fees and costs incurred in bringing this action;

C.  Award pre-judgment interest under the Florida Interest Act; and

D.  Award costs and such other and further relief as this Court deems just and proper.

## COUNT V
## CONVERSION

108.     Plaintiff adopts and realleges paragraphs 1 through 95 above as if fully set forth herein.

109.     The Trust should have more than $3 million in assets of which more than $900,000 is payable to the Foundation as a beneficiary under the Trust. Ex. B at 5, Residue.

110.     Defendant breached his fiduciary duties, first as Chris Brewer's agent under the Power of Attorney and then as Trustee under the Trust, that has resulted in more than $1.1 million in assets ultimately belonging to the Trust being diverted to Defendant and his family.   No provision in the Will, Trust, or Power of Attorney allowed Defendant to divert these assets to himself at the expense of the Trust and its beneficiaries.

111.     The Foundation did not consent to Defendant's actions in diverting these assets to himself and his family.

112.     Defendant wrongfully remains in possession of these Trust assets that should have been paid to the beneficiaries under the Trust, including the Foundation. The Foundation has the immediate right to possession of these assets.

113.     The Foundation made written demand on Defendant to provide information on the location and status of these assets on two separate occasions: August 8 and September 4, 2018. After Defendant refused to provide the requested information, the Foundation then filed this lawsuit on October 25, 2018, demanding this information and a return of all assets taken from the Trust and its beneficiaries. Defendant, however, refuses to provide the requested information or to return the more than $1.1 million in Trust assets.

114.     The Foundation, Charitable Organizations and other beneficiaries will be harmed if Defendant is allowed to retain these funds.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant, Larry Huggins, as follows:

A. Award actual, compensatory, incidental, and consequential damages, in an amount to be

determined, after a full and complete accounting has been provided to Plaintiff;

B.  Award Plaintiff's attorney's fees and costs incurred in bringing this action;

C.  Award pre-judgment interest under the Florida Interest Act; and

D.  Award costs and such other and further relief as this Court deems just and proper.

## COUNT VI

### REMOVAL OF TRUSTEE IN ACCORDANCE WITH CHAPTER 736 SECTION 736.0706 OF THE FLORIDA TRUST CODE

115.    Plaintiff adopts and realleges paragraphs 1 through 62 and paragraphs 78 through 95 above as if fully set forth herein.

116.    Based upon the actions of Defendant, he has committed a breach of trust as Trustee, by misappropriating Trust assets, refusing to return Trust assets to the Trust, refusing to provide notice that the Trust is irrevocable, refusing to provide an accountings as provided for in Florida Statute §736.0813 and §736.0815, creating an impermissible conflict of interest, and refusing to respond to reasonable requests for information.

WHEREFORE, Plaintiff respectfully requests that in accordance with Florida Statute 736.0706 and Florida Statute 736.1001 this court enter judgment against Defendant, Larry Huggins, as follows:

A.    Order the removal of Defendant Larry Huggins as Trustee of the Trust;

B.    Deny any compensation to Defendant as Trustee;

C.    Compel the Defendant to redress his breach of trust by paying sufficient money to reimburse the Trust for his misappropriations of Trust funds;

D.    Deny Defendant and his wife any distribution from the Trust;

E.    Order Defendant to provide a true and accurate accounting of the Trust;

F.    Award Plaintiff's attorney's fees and expenses incurred in bringing this action; and

G.      Award costs and such other and further relief as this Court deems just and proper.

**COUNT VII**
**APPOINTMENT OF NEW TRUSTEE**

117.    Plaintiff adopts and realleges paragraphs 1 through 62 and paragraphs 78-95 above as if fully set forth herein.

118.    The Trust states: "In the event of the death, incapacity, or resignation of such Trustee, Grantor appoints … Ronald E. Osman as successor Trustee."

119.    Plaintiff, therefore, requests that the Court appoint Ronald E. Osman as Successor Trustee of the Trust.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant, Larry Huggins, as follows:

A.      Order the appointment of Ronald E. Osman as Successor Trustee of the Trust;

B.      Award Plaintiff's attorney's fees and expenses incurred in bringing this action; and

C.      Award costs and such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues/claims that can be tried to a jury under applicable law.

DATED:  August 22, 2019.

                                        */s/ Jeffrey R. Baron*
                                        Jeffrey R. Baron (*Pro Hac Vice*)
                                        BAILEY & GLASSER, LLP
                                        8012 Bonhomme Avenue, Suite 300
                                        Clayton, Missouri 63105
                                        Telephone:      (314) 863-5446
                                        Facsimile:      (314) 863-5483
                                        Email:          jbaron@baileyglasser.com

David L. Selby, II (ASB-6994-Y62D)
Matthew J. Ford (ASB-6725-W58F)
BAILEY & GLASSER, LLP
3000 Riverchase Galleria, Suite 905
Birmingham, AL  35244
Telephone:      (205) 988-9253
Facsimile:      (205) 733-4896
Email:           dselby@baileyglasser.com
                 mford@baileyglasser.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2019, I served a true copy of the foregoing by filing electronically via the Court's CM/ECF system, which will provide a notice of and a copy of the same to all counsel of record.

*/s/ Jeffrey R. Baron*
Jeffrey R. Baron