IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THE ROBERT N. BREWER    )
FAMILY FOUNDATION      )
                            )
       Plaintiff,        )
                            )     CASE NO. 2:18-cv-915-ALB
     v.                 )
                            )
REX    LARRY    HUGGINS,  as)
TRUSTEE OF THE CHRISTINE C.)
BREWER REVOCABLE TRUST, and)
individually                 )
                            )
       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Rex Huggins' ("Defendant") motion to dismiss the claims against him. *See* Doc. 52. The Robert F. Brewer Family Foundation ("Plaintiff"), a beneficiary of the trust to which Defendant was appointed trustee, sued Defendant for violations of fiduciary duty in connection with the management of trust assets. Now, Defendant moves to dismiss Plaintiff's claims against him, alleging that they fail to state a claim upon which relief can be granted. Upon consideration, the motion is DENIED.

## <u>BACKGROUND</u>

These facts are from the operative complaint, which the Court assumes is true, and are taken in the light most favorable to the nonmovant, the Plaintiff.

Business magnate Robert M. Brewer died in 2012. During the preceding decades, he had built and operated a series of successful business ventures, including a motel chain called Best Inns. His will included the creation of his eponymous foundation, Plaintiff in this case, as well as gifts for his wife and sons. Christine, Brewer's wife, created a revocable trust in 2014. The Trust is governed by Florida law. Christine requested that Ronald Osman, her personal attorney, retain the original Trust documents and her original will. Also in 2014, Christine gave Rex Huggins the power of attorney over her affairs and Elaine Huggins the power of her healthcare surrogate.

Christine provided generously for the Huggins family in the Trust, leaving them a 2012 Lexus, sterling silver, fur apparel, gold flatware, crystals, fine china, Christmas decorations, and paintings. In addition to all of that, Rex Huggins was left $1.4 million and Elaine Huggins an additional $50,000. Christine's Trust included charitable gifts for Habitat for Humanity, the Salvation Army, Cypress Lake United Methodist Church, the American Heart Association, the American Lung Association, and the American Cancer Society. These gifts totaled $400,000. The residue of the estate, including jewelry valued at $200,000, was to be transferred to the Robert N. Brewer Family Foundation. Christine herself was made Trustee, with Rex Huggins as successor Trustee.

When the Hugginses found out in 2016 that Christine had been diagnosed with dementia, suffered a stroke, and fallen down, they transported her from her home in Florida to a rehabilitation center in Tallassee, Alabama. After her discharge, Christine moved to the Huggins home in Notasulga, Alabama, where she remained until her death in 2018. During Christine's stay with the Hugginses, her physical and mental health continued to deteriorate. Among other things, Christine would hallucinate, speak to the dead, complain of confusion, call the Hugginses incorrect names, and accuse nurses of stealing her jewelry. All these occurrences were confirmed by the Huggins family to Osman via text messages beginning in July of 2016. In that same month, Osman asked Rex to have Christine's deteriorating condition evaluated by a physician. Rex said he would but did not. Further, in April of 2017, Rex admitted openly to Osman that he did not believe Christine was mentally competent.

On October 14, 2016, Rex set up a new Trust Account at the Bank of Vernon. Records show that the Trust Account had a balance of $323,279.43 on November 30, 2016. By July 6, 2018, a month after Christine's death on June 1, 2018, the Trust Account had a balance of $158,691.48. On December 21, 2015, Osman sent Christine a distribution check of $270,000.00, representing proceeds from the sale of her interest in the Best Suites motel located in Lake Charles, Louisiana. He

believed these funds would be deposited into a Trust account in accordance with Christine's estate plan, but they never were.

During her rehabilitation in 2016, Christine allegedly signed an amendment to the Trust, removing all gifts to charitable institutions except for the Family Foundation and giving $300,000 to Elaine Huggins and her daughter. This document was witnessed by only one person.

On the same day she signed the alleged amendment, Osman paid an unrelated visit to Christine at the rehabilitation clinic. Christine was confused as to who Osman was, even though he had represented Christine and her husband for decades. Osman specifically questioned Christine as to her relatives, the date, and where she was located. Christine thought her dead siblings were alive and she knew neither where she was located, nor where her home was. She was also unaware of the year. Christine did not mention any Trust Amendment to Osman, even though he was the attorney for both Christine and the Trust. Rex did not provide Osman a copy of the amendment until two years later, on January 9, 2018, when Osman traveled to Alabama to visit Christine at the Huggins home. At the end of the visit, Rex showed Osman a copy of the Amendment. When Osman asked why he had not previously been given copies, Rex did not respond. He told Osman that he would not be cheated out of his inheritance.

After Christine's death, Osman noticed what he considered to be unusual distributions from the Trust. For example, shortly before Christine's death, she allegedly wrote out several large checks to the Huggins family. Defendant also withdrew $15,000 from the Trust Account by telephone on June 1, 2018, the day Christine fell into a coma and died. Osman also discovered that the Hugginses used Christine's Citi-Bank credit card in the year preceding her death to the tune of $274,276.51 in groceries, gas, prescription drugs, and discretionary items. Some of the discretionary items were not customary purchases for an ailing octogenarian. For instance, in the month leading up to Christine's death, her credit card statement showed approximately $1,846.00 in charges over six separate trips to Neiman Marcus, a high-end clothing retailer.

Because of the withdrawals, the checks made out to the Huggins family, and the credit card expenditures, Osman contacted Rex on August 8, 2018, seeking an explanation. Rex responded on August 20, 2018 that Christine had insisted his family receive these amounts as gifts and that she gave them permission to use her credit card as needed. Rex failed to provide a full accounting. Around this time, Osman commissioned a forensic audit of the Trust's financial records he had in his possession and the items provided by Rex. The audit revealed $1,140,192.65 in unidentifiable disbursements from accounts belonging to Christine and the Trust.

About a month later, Osman again requested that Rex provide details on these disbursements. This included a request for 22 months of itemized bank statements from Christine's SunTrust Bank account, evidence that Christine was mentally competent to make payments from December 26, 2015 to June 1, 2018 on hundreds of thousands of dollars in checks to the Huggins family, further explanation of checks signed by Rex as Christine's power of attorney, further explanation of a gift of over $180,000 in April of 2017 that Christine supposedly gave to the Hugginses, an accounting of the $270,000 distribution from Best Suites Lake Charles, and further explanation of the charges to Christine's credit card. Rex did not reply to this request.

On August 1, 2019, pursuant to a Court order, Defendant provided the first accounting of Trust assets. The accounting failed to identify Trust assets totaling more than $1.1 million, including approximately $500,000 that was withdrawn between 2015 and 2018 from the Merrill Lynch account, approximately $500,000 that was withdrawn from Christine's personal SunTrust Bank account, and the $270,000 distribution from the Best Suites Lake Charles transaction. The accounting further failed to identify funds existing in the Trust Account and Christine's personal SunTrust Bank account at the time of her death. Just over a month after Christine died and Rex became Trustee, the Trust Account had a balance

of $158,691.48 and the SunTrust account had a balance of $4,266.62. The accounting offers no explanation as to what Rex has done with this money.

At the time of Christine's death, the Trust assets should have totaled more than $3 million, including a $2.19 million Merrill Lynch brokerage account, about $500,000 from Christine's personal bank account, $270,000 from the Best Suites Lake Charles transaction, and over $200,000 in jewelry. Instead, only $1.8 million is available. Defendant has taken no action to identify missing assets or to turn them over to the Trust. Due to the loss of these assets, the Trust will not have money for the Foundation after it satisfies higher priority gifts. If these funds are returned, the Trust will have sufficient funds to pay the specific cash bequests to individuals and charitable organizations with more than $900,000 remaining to distribute to the Foundation.

## STANDARD

When considering a motion to dismiss, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). There are two questions a court must answer before dismissing a complaint. First, the court must ask whether there are allegations that are no more than conclusions. If there are, they are discarded. Second, the court must ask whether there are any remaining factual allegations which, if true, could plausibly give rise to a claim for relief. If

there are none, the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## DISCUSSION

Plaintiff alleges five counts of fiduciary malfeasance against Defendant and then tacks on two requests that it calls counts; Plaintiff requests that the Court remove Defendant as Trustee of the Revocable Trust and further that Plaintiff's counsel be appointed as Trustee. The five substantive counts include statutory breaches of power of attorney under Florida Statute §709.2114, and of fiduciary duties as trustee under Florida Statute §736.0801-804, as well as the torts of unjust enrichment, money had and received, and conversion.

Instead of taking issue with specific counts, Defendant argues broader issues; specifically, that Defendant owed no duty to Plaintiff during Christine's life, that Plaintiff is not Christine's successor in interest after her death, and that missing assets ought to be overlooked because Christine told Rex he could have them in ways that complied with Florida law. Defendant has also made sweeping, cursory statements about the general plausibility of Plaintiff's claims. Plaintiff argues that none of the agreements Christine made were legitimate because she was suffering from severe dementia and that Rex owed duties to Christine's successors in interest as her power of attorney and to vested beneficiaries of her Trust as her Trustee.

Because this is a suit brought under diversity jurisdiction and the Trust document incorporates Florida law, the Court will apply Florida law.[1]

## A. The Robert F. Brewer Family Foundation Has Alleged Sufficient Facts To State a Plausible Claim of Standing.

The briefs reveal a tangle of arguments between the parties over whether the Robert F. Brewer Family Foundation has standing to sue. There are several issues to resolve. First, the Court must decide whether Rex was the Trustee for the Christine Brewer Revocable Trust at any time prior to the death of Christine. Second, the Court must decide whether, if Rex was acting as the Trustee, a contingent beneficiary like the Plaintiff may sue over the alleged breach of his duties. Third, the Court must decide whether Plaintiff can stand in Christine's shoes to sue Rex for breaching his duties under Christine's power of attorney.

### 1. The Complaint Plausibly Alleges that Rex Was the Trustee Before Christine's Death.

When the Christine Brewer Revocable Trust was created, Christine herself served as the Trustee. Indeed, Christine was technically the Trustee until her death. However, Plaintiff claims that Rex had effectively become the Trustee well before Christine's death. Although the Court asked the parties during the July

---

[1] At this point, the parties appear to agree that Florida law governs everything involving this matter. Florida law certainly governs the trust document through the choice of law provision. But it is not clear that Florida law governs the substantive tort claims, such as conversion, unjust enrichment, etc. The parties may need to evaluate and address this issue as the case progresses.

teleconference to brief the issue of whether Rex could fairly be called the Trustee prior to the death of Christine Brewer, Defendant has ignored the question entirely. Plaintiff has adduced two cases for the broad proposition that anyone who undertakes a relationship with another that involves managing or advising financial decisions has a fiduciary relationship with them.

Plaintiff's opening salvo misses wide. Plaintiff argues Rex effectively became the Trustee because he named himself as the Trustee on the Trust Account with Vernon Bank and assumed total control over the trust assets using his power of attorney. Then, Plaintiff cites Florida precedent holding that "every man is a trustee whose business is to advise concerning or to operate the business of another," *Quinn v. Phipps*, 93 Fla. 805, 823, 113 So. 419, 425 (1927), and "a fiduciary relation [is] implied in law when 'confidence is reposed in one party and a trust accepted by the other.'" *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. Dist. Ct. App. 1994) (internal citation omitted). While laudable sentiments, neither holding occurs within the context of trusts and estates law.

However, there is one published case from Florida that does support Plaintiff's proposition. The concept of a "de-facto trustee" was articulated by the Third District Florida Court of Appeal in *Brigham v. Brigham*, 11 So. 3d 374, 387 (Fla. Dist. Ct. App. 2009). The case includes a set of facts eerily like those at bar:

a wealthy widow died with an estate that would have been worth $3 million if not for the financial malfeasance of her daughter-in-law, who managed the widow's accounts and received hundreds of thousands of dollars from the estate. This daughter-in-law did not wield the power of attorney but due to her involvement in the financial management of the estate, she was deemed a de facto trustee of the widow's revocable trust and further found to owe corresponding duties to the settlor. *See id.*

Under Florida law, the complaint sufficiently states a claim that Rex Huggins was the de facto Trustee of Christine's trust. Not only did he have complete control over her assets, but he regularly drew on them, spending hundreds of thousands of dollars. For the last two years of her life, every aspect of Christine's existence was under the control of Rex Huggins. The facts as alleged in the complaint are that Christine was hallucinating, talking to dead people, and couldn't remember who anyone was. Due to the general sentiments of the Florida Supreme Court in *Quinn* and the more specific holding of the Third District in *Brigham*, this Court concludes that, as a matter of Florida law, the complaint sufficiently states a claim that Rex was the de facto Trustee of the Christine Brewer Revocable Trust and possessed duties commensurate with that position.

   2.  Under Florida law, a Previously Contingent Beneficiary May Sue After Its Rights Have Vested.

With a plausible claim that Rex is the Trustee of Christine's Trust, the next question is whether a contingent beneficiary like Plaintiff may sue that Trustee. The key case on point is *Brundage v. Bank of Am.*, 996 So. 2d 877 (Fla. Dist. Ct. App. 2008). There, the Florida court held that a trustee of a revocable trust owes no duty to a contingent beneficiary. But "once the interest of the contingent beneficiary vests upon the death of the settlor, the beneficiary may sue for breach of a duty that the trustee owed to the settlor/beneficiary which was breached during the lifetime of the settlor and subsequently affects the interest of the vested beneficiary." *Id.* at 882. That is precisely what Plaintiff is trying to do in this case.

At this early point in the case, Plaintiff has adequately alleged a loss to its Trust distribution as a result of the alleged actions of Rex. The Robert F. Brewer Family Foundation looked to receive nearly $1 million from the Trust. But, after the alleged improper expenditures by the Huggins family, the Foundation will receive nothing. *See In re Estate of Mahaney*, 903 So. 2d 234, 237 (Fla. Dist. Ct. App. 2005) (noting that residuary gifts are distributed only once all other bequests have been fulfilled). To the extent Rex breached his duties as a de facto Trustee to Christine as the settlor *and* those breaches caused a diminishment in what Plaintiff would

receive from the Trust, Plaintiff can recover.[2]  Accordingly, there is a plausible claim that Florida law gives Plaintiff standing to maintain this claim.

    3.  <u>The Complaint Plausibly Alleges That Plaintiff Can Sue Over Christine's Power of Attorney.</u>

The Foundation also has standing at this point in the case to sue Rex for alleged breaches in his role as Christine's power of attorney.  No one disputes that Rex owed duties to Christine as her power of attorney. Plaintiff argues that it is a successor in interest to Christine and can sue Rex for breaching those duties.  Under Florida Statute §709.2117, an agent is liable to the principal's successors in interest for the restoration of the value of the principal's property to what it would have been had the violation not occurred, including reimbursement for trust money expended on attorney's fees.

In response, Defendant states that there is "no Florida case or statute [that] even implies that a contingent beneficiary becomes a 'successor in interest' to a decedent." *See* Doc. 52 at 5.  Neither the Florida courts nor those within the Eleventh Circuit have defined the term "successor in interest" in the context of trust and estate law.  But that does not mean these claims should be dismissed.  Various courts

---

[2] Defendant writes that "[t]his Court informed opposing counsel [that Plaintiff has no standing to assert those claims because, as a contingent beneficiary, it was owed no duties by anyone] during its telephone conference call."  After closely reviewing that conference call, the Court finds that it never said any such thing.  Instead, the Court expressed that it was concerned about whether Plaintiff had standing to file the suit.  Plaintiff filed a cogent brief on the issue that has assuaged the Court's concern at least for purposes of addressing the current motion to dismiss.

around the country, both state and federal, have held that, under certain circumstances, beneficiaries in an estate plan qualify as successors in interest to a decedent. *See e.g. Torres v. Bayer Corp.*, 2012 WL 13076349, at *1 (D. Minn. June 22, 2012) (holding that "California law defines a decedent's successor in interest as 'the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action.'"); *Mangrum v. Chavis*, 2018 WL 1101719, *3 (Va. 2018) (sole beneficiary to checking account was principal's "successor-in-interest to those proceeds."); *Covenant Presbytery v. First Baptist Church*, 2015 Ark. App. 417, 467 S.W.3d 190 (2015) (vacated on other grounds) (holding that a church was a successor in interest because it had a right to trust property.); *Tr. v. Bartle*, 2016 WL 5661573, at *3 (E.D. Mich. Sept. 30, 2016) (defining "successor in interest" as "someone who follows another in ownership or control of property. A successor in interest retains the same rights as the original owner, with no change in substance."); *AXA Equitable Life Ins. Co. v. Grissom*, 2012 WL 5879772, at *3 (M.D. Tenn. Nov. 21, 2012) (holding that although "a successor in interest may be distinct from…a person for whose benefit property is held in trust…the Tennessee Code Annotated defines successor in interest as the beneficiary…"). Moreover, Florida law broadly permits interested parties to file a suit against an agent who has breached a power of attorney. *See* Fla. Stat. 709.2116 (2)(d) ("[a]ny other interested person if the person demonstrates to the court's satisfaction that the person is

interested in the welfare of the principal and has a good faith belief that the court's intervention is necessary.").

Under the facts as alleged in the complaint and at this early stage of the litigation, the Court concludes that the Foundation has stated a plausible claim that it may sue over alleged breaches in the power of attorney. The Foundation has alleged that Rex acted under the power of attorney with knowledge of Christine's estate plan but failed to act in good faith to preserve it by diverting more than $1.1 million to himself. *See* Doc. 42 ¶¶72, 75. Christine identified the Family Foundation as a beneficiary of the Trust. *See* Doc. 42 ¶9. And the Foundation is entitled to the residue of the Trust estate. *See* Doc. 42 ¶¶9, 61-62. Rex, while acting as Christine's agent, allegedly depleted Trust assets to such an extent that the Foundation may not receive any gift under the Trust. He allegedly did so by diverting money to himself and his family when Christine could not voluntarily have consented to these changes. Accordingly, at this point in the case, the Foundation has standing to file suit over alleged breaches of the duties owed as power of attorney.

**B. There Are Adequate Substantive Allegations for the Counts in the Complaint.**

Although Plaintiff states that Defendant's motion to dismiss does not take issue with the counts of unjust enrichment, conversion, or money had and received, *see* Doc. 58 at 15, the Court is not entirely convinced. Defendant refers to the complaint as "baseless" and "conclusory," and has also stated that "Plaintiff does not allege that Mr. Huggins or anyone else was guilty of any improper conduct." *See* Doc. 52 at 6. Because there seems to be confusion as to what exactly the controversy entails, and whether the constituent parts of the controversy are substantively supported, the Court will construe the motion to dismiss as challenging the merits of Plaintiff's claims under *Twombly-Iqbal*.

The gist of the operative complaint is that Rex used his position to take money from Christine's estate that he should not have. The Court will not take up each allegedly improper expenditure. At this stage, it is enough that the allegations in the complaint make several plausible claims against Defendant for one or more actions he took during Christine's life and after her death.

Breach of Duty as Trustee: Trustees have special duties to competently administer the trusts that they oversee under Florida law. These duties include (1) the duty to administer the trust in good faith, Florida Statute §736.0801, (2) the duty to administer the trust solely in the interests of the beneficiaries, Florida Statute §736.0802, (3) the duty to act impartially and with due regard to the beneficiaries'

respective interests, Florida Statute §736.0803, and (4) the duty to administer the trust as a prudent person, exercising reasonable care, skill, and caution, Florida Statute §736.0804. These duties find their enforcement in §736.1001, whereby a beneficiary may sue to force the trustee to restore to the trust any ill-gotten gains and ask the court to replace the trustee. Here, Plaintiff has alleged that Rex was a de facto trustee during Christine's life and became the express Trustee upon her death. Plaintiff alleges that, during her life, Rex engaged in self-dealing and disposed of the Trust assets without Christine's valid consent and that, after her death, incorrectly disposed of over $160,000 in Trust assets. The allegations in the complaint state a plausible claim upon which relief may be granted.

Breach of Duty under Power of Attorney: Under Florida Statute §709.2114, an agent under a power of attorney must act in good faith, not act contrary to the principal's reasonable expectations, not act in a manner that is contrary to the principal's best interest, and must attempt to preserve the principal's estate plan. The preservation of the estate plan must, under §709.2114(1)(a)(4)(e), take special account of "the principal's personal history of making or joining in making gifts." Plaintiff has plausibly alleged that Rex violated this obligation because: 1) Rex was aware the residuary of the estate would go to Plaintiff, (2) that even in her purported amendment to the Trust that attempted to strip the gifts from all other charitable institutions, Christine left in the residuary gift to Plaintiff, (3) that Christine was

hallucinating, conversing with ghosts, and incapable of remembering who anyone was, and (4) that after Rex acknowledged that Christine could not make her own rational decisions, he used his power of attorney to dispose of Trust assets in such a way that there was nothing left for Plaintiff.

Unjust enrichment: In Florida, "unjust enrichment…is an equitable remedy requiring proof that money had been paid due to fraud, misrepresentation, imposition, duress, undue influence, mistake, or as a result of some other grounds appropriate for intervention by a court of equity." *Hall v. Humana Hosp. Daytona Beach*, 686 So. 2d 653, 656 (Fla. Dist. Ct. App. 1996). The essential elements of unjust enrichment are (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, (3) and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof. *See Ruck Bros. Brick v. Kellogg & Kimsey, Inc.*, 668 So. 2d 205, 207 (Fla. Dist. Ct. App. 1995). Florida courts have contemplated unjust enrichment claims in the trust context before. *See Turkish v. Brody*, 221 So. 3d 1206, 1208 (Fla. Dist. Ct. App. 2016). Plaintiff has alleged enough facts to support this claim. Plaintiff alleges that Christine conferred benefits on Rex, that Rex was aware that hundreds of thousands of dollars, in addition to the $1.4 million left for him in the Trust, represented a windfall for him, and that it was improper for Rex to retain the benefits that Christine conferred upon him because, by Rex' own

admission, Christine was exhibiting signs that she was incapable of making informed decisions when she did so. Therefore, Plaintiff has plausibly stated this claim.

Money Had and Received: A count of "money had and received" requires that a plaintiff show money was improperly received by a defendant when it would be improper to deprive the plaintiff of the money. In Florida, "the elements of money had and received are that the money be erroneously paid or received by a defendant when to permit the defendant to keep the money would unjustly deprive the plaintiff of his ownership of the money." *Heretick v The Northwestern Mut. Life Ins. Co.*, 2003 WL 25694174 (Fla. Cir. Ct. June 23, 2003). The claim is nearly identical in its purpose, elements, and remedy, to unjust enrichment. *See id.* Whether the claim originates from the breach of duty owed to Christine during her life or the misappropriation of funds after her life ended, Plaintiff has alleged enough facts to plead that Defendant's receipt and retention of money was improper.

Conversion: Under Florida law, "the essential elements of a conversion is (sic) a wrongful deprivation of property to the owner. Before a party may be held guilty of such conversion, it must be shown that there was exercised a positive, overt act or acts of dominion or authority over the money or property inconsistent with and adverse to the rights of the true owner." *S. S. Jacobs Co. v. Weyrick*, 164 So. 2d 246,

250 (Fla. Dist. Ct. App. 1964). Again, Plaintiff plausibly alleges Defendant has wrongfully deprived both Christine and beneficiaries of their property.

### C. Shotgun pleading

Defendant argues that the operative complaint should be dismissed as a shotgun pleading. A shotgun pleading is one that is "calculated to confuse the 'enemy,'…so that theories for relief not provided by law and which can prejudice an opponent's case…can be masked." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). The most common type of shotgun pleading, and the one Defendant accuses Plaintiff of indulging in, is one where "a complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts contain irrelevant factual allegations and legal conclusions." *Id*.

Plaintiff rebuts by pointing out that in *Weiland*¸ the case cited by Defendant for the proposition that shotgun pleadings must be dismissed, the court found that even though a pleading might incorporate prior allegations by reference, it would not be dismissed as a shotgun pleading unless it was "virtually impossible to know which allegations of fact are intended to support which claims." *Id.* at 1325 citing *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). It is not difficult for Defendant in this case to understand what allegations

are being leveled against him. While the five principal counts are somewhat distinct, the same basic claim lies at each one's core: Rex Huggins took advantage of his position in Christine Brewer's life to take more of her money than he was entitled to. The operative complaint gives Defendant adequate notice of his alleged wrongdoings.

### D. Witnesses Required for Modification

The parties disagree over whether the modifications that Christine made to her Trust complied with the formalities of Florida law. This issue is important because the core of Plaintiff's fiduciary violation claims might fail if, as a matter of law, Christine validly modified her Trust documents in 2016 to give the Huggins family so much of her money that no residue would remain for the Foundation. As the alleged facts stand, the modification was witnessed by one person. Defendant argues that the Trust documents expressly authorized Christine to modify it without any witnesses present. Plaintiff counters that, regardless of whether there is a witness requirement in the Trust documents, Florida law requires two witnesses for any trust modification to be valid.

Defendant's contention is not borne out by the text of the Trust documents. Defendant claims that the Trust documents "expressly authorized" this type of modification by Christine. *See* Doc. 52 at 8. The Court has examined the cited pages

of the Trust document. Although these pages certainly allowed Christine to modify the document during her life and at her discretion, the Court can find no passage or phrase authorizing anyone to modify the terms of the document *without the presence of two witnesses*. The Trust document appears to be silent about how modifications must be witnessed.

Plaintiff, on the other hand, cites to Florida Statute §732.502(5) for the proposition that documents modifying a trust must be witnessed by two witnesses. According to §732.502(1)(b)(2)(b), at least two witnesses must be present to create a will and the Florida courts have extended these requirements to trusts. *See Kelly v. Lindenau*, 223 So. 3d 1074, 1076 (Fla. Dist. Ct. App. 2017) (holding that "a [revocable] trust—or an amendment thereto—must be signed by the settlor in the presence of two attesting witnesses and those witnesses must also sign the trust or any amendments in the presence of the settlor and of each other. These requirements are strictly construed.") It is alleged that only one witness signed the modification of the Trust seeking to divest charitable institutions in favor of the Huggins family. Whether these modifications are valid or invalid must be addressed later in the case on a complete record. At this point, it is sufficient that the text of the Trust document does not by itself clearly refute Plaintiff's claim that these modifications are invalid.

## **CONCLUSION**

Defendant's motion to dismiss is DENIED.


**DONE** and **ORDERED** this 16th day of December 2019.


                                  _____/s/ Andrew L. Brasher_____
                                  ANDREW L. BRASHER
                                  UNITED STATES DISTRICT JUDGE